TIMOTHY COURCHAINE
United States Attorney
District of Arizona
KEVIN M. RAPP
Assistant U.S. Attorney
Arizona State Bar No. 014249
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Kevin.Rapp@usdoj.gov
Attorney for Plaintiff

FILED Jul 11 2025 CLERK U.S. DISTRICT COURT DISTRICT OF ARIZONA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-25-01005-PHX-DLR (ESW) |
| Plaintiff, | **I N F O R M A T I O N** |
| vs. | VIOS: 18 U.S.C. § 1343 (Wire Fraud) Count 1 |
| Jason Daniel Thorp, | |
| Defendant. | |

THE UNITED STATES ATTORNEY CHARGES:

### INTRODUCTION

At all times relevant to this Information:

### Department of Defense Contracting Process

1. The United States Department of Defense ("DoD") contracted through its various agencies, such as the Defense Logistics Agency ("DLA"). DLA was the United States' combat logistics support agency, and as such managed the global supply chain for all military services, ten combatant commands, other federal agencies, and partner and allied nations. DLA had three primary depots that manage the military's global supply chain -DLA Land and Maritime ("L&M") in Columbus, Ohio, DLA Aviation in Richmond, Virginia, and DLA Troop Support ("TS") in Philadelphia, Pennsylvania.

2. When the DoD determined that a particular part was needed, the DoD issued "Solicitations," or Requests for Quotation ("RFQs") electronically through a web-based

application, DLA Internet Bid Board System ("DIBBS"). Users (potential contractors or vendors) could search for, view, and submit secure quotes based upon the RFQs for the items DLA was looking to obtain. The RFQs listed the DoD requirements, which could include specified manufacturers and part numbers, drawings and/or specifications such that any potential contractor is aware of exactly how the part is to be made or the approved source of the part for purchase. On a "code and part" contract, the contractor is required to provide DLA a specific part that was manufactured by an approved source; DLA identifies the specific part and approved source(s) in its solicitation and contract. DoD contractors were required to have a quality control system in place to ensure the parts supplied are in accordance with DoD specifications. This is especially important when a contract calls for a Critical Application Item ("CAI"). CAIs are items on a U.S military weapon system that are essential to the weapon's performance, operation, and/or the preservation of life or safety of operating personnel.

3. On code and part contracts, the contractor's bid for each contract contains the following notice, in part, regarding a contractor's representation that it will provide an exact product:

> Any product not meeting these criteria is considered an alternate product even though it may be manufactured in accordance with the drawings and/or specifications . . . (see DLAD 52.217-9002). To confirm the technical acceptability of your exact product quote, we may request documents (e.g., invoice, quote, agreement) to show traceability . . . . Failure to provide adequate traceability upon request may result in the rejection of your quote as technically unacceptable. Any indication that you have misrepresented the product offered shall result in the Government considering rescission of any resultant contract and all other sanctions, contract penalties, and remedies established under any other law or regulation.

4. In the contracting process, once parts are shipped to the DLA, contractors enter the shipping and invoicing information electronically, through a secure, web-based system, which allows the government to receive the invoice and pay electronically. Upon receiving the invoice, which also represents that the contractor is providing goods in

conformance with the contract requirements, the DoD, through the Defense Finance and Accounting Service ("DFAS"), located in Columbus, Ohio, issued electronic payment to the supplying contractor and retained a voucher as a record of the payment.

### The Defendant and His Employment

5. The defendant, JASON DANIEL THORP ("THORP"), resided in Peoria, Arizona.

6. THORP was an Aerospace/Military Sales Manager employed by CIS, in Phoenix between 1993 and March 2022.

7. THORP's pay structure included a fixed base salary and a commission structure where he received 25% commission of CIS's net profits for governmental sales (net profits was defined as revenues attributable to such sales less cost of goods sold).

8. THORP was the sole DIBBS user and bidder on behalf of CIS for DLA solicitations.

### COUNT 1
### 18 U.S.C. § 1343
### (Wire Fraud)

9. Each of the foregoing allegations are re-alleged and incorporated by reference as though fully set forth herein.

10. Between in or around December 2018 and January 2022, in the District of Arizona, and elsewhere, the defendant, JASON DANIEL THORP, knowingly devised and intend to devise a scheme to defraud in order to deprive the U.S. Department of Defense of money and property by means of materially false pretenses, representations and promises, and concealment of material facts, and for the purpose of executing the scheme, used, or caused others to use, wire communications in interstate commerce. As a result of THORP's scheme to defraud, THORP personally benefitted by receiving approximately $100,000 of commission from CIS related to the sale of substitute, non-conforming products to the DoD on approximately 113 purchase orders.

**Manner and Means**

11. The manner and means by which THORP sought to execute the scheme to defraud include, but are not limited to, the following:

   a. THORP quoted, or bid on, "code and part" contracts that required THORP, on behalf of CIS, to provide a specific part, often a Critical Application Item, that was manufactured by an approved source as specified by DLA in the contract. In these quotes, THORP represented that he would provide the "exact product" as requested.

   b. Instead of purchasing the required parts per the Purchase Order/Contract requirements, THORP requested quotes from and commissioned unapproved sources to manufacture substitute, unauthorized parts and/or coordinated the purchase of material and directed the CIS production team to manufacture substitute parts. THORP often obtained surplus samples to reverse-engineer part specifications.

   c. To receive payment, THORP caused these substitute, non-conforming parts to be shipped to DLA and for invoices to be submitted to the DoD.

**Wire Communication**

12. On or about the dates listed below, for the purpose of executing and attempting to execute the scheme or artifice to defraud and to obtain money and property, THORP, individually and doing business under the entity described above, knowingly transmitted and caused to be transmitted, by means of wire and radio communications in interstate commerce, certain writings, pictures, signals and sounds, to and from the District of Arizona and elsewhere, as set forth below:

| Count | Wire Date (On or About) | Sender | Recipient | Item Sent |
|---|---|---|---|---|
| 1 | 2/4/21 | THORP from IP address 68.225.145.69 located in Phoenix | DLA on DIBBS Server located in Boardman, OR | DLA Internet Bid Board System Submission for SPE7L321T9339 |

All in violation of Title 18, United States Code, Section 1343.

Dated this _____ day of _____, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

**KEVIN RAPP**  Digitally signed by KEVIN RAPP
Date: 2025.07.10 16:26:15 -07'00'

_____   _____
Date                                                              KEVIN RAPP
                                                                      Assistant U.S. Attorney